IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JENNIFER JONES, ) | |
| ) | CIVIL ACTION NO. 0:06-1441-MBS-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability as of September 12, 2001 due to seizures, headaches, balance problems, and double vision. (R.pp. 53, 64, 87). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



was held on January 19, 2006. (R.pp. 413-435). The ALJ thereafter denied Plaintiff's claims in a decision issued March 2, 2006. (R.pp. 16-23). The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 8-11).

The Plaintiff then filed this action in United States District Court, asserting generally that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. However, notwithstanding the Clerk having contacted Plaintiff's attorney on several occasions concerning the filing of Plaintiff's brief, Plaintiff never filed a brief for consideration by the Court.  Pursuant to an order issued September 25, 2006, the Commissioner filed her brief in support the decision on November 2, 2006.  The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980).  If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision.  Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."**

2



[emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was fifty-three (53) years old when she alleges her disability began, has a high school education with past relevant work experience as a line-up clerk in the textile industry. (R.pp. 50, 53, 64-65, 70, 87-88, 93). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. Further, with respect to Plaintiff's application for DIB, Plaintiff's period of insurability expired on December 31, 2007; therefore, Plaintiff must establish disability on or before that date in order to be entitled to DIB. (R.p. 16).

After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform her past relevant work due to a seizure disorder and tension type headaches, she nevertheless retained the residual functional capacity to perform work that requires only occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no work around dangerous machinery. (R.p. 23). As the Plaintiff did not file a brief, there is no



way for the Court to know exactly what error or errors Plaintiff alleges the ALJ committed when reaching his decision. Consequently, the undersigned has generally reviewed the record to determine whether substantial evidence supports the decision of the ALJ in this case.

Plaintiff's medical history reflects that she underwent a right frontal craniotomy in 1997 to remove a slow growing brain tumor. (R.pp. 183-185, 204-205, 216-218). Plaintiff was thereafter treated for headaches by Dr. Allan Ryder-Cook in 1998, and again in 2000. (R.pp. 187, 206, 219-223, 225-230). Plaintiff's complaints in 2000 included left hand tremors and dizziness. Dr. Ryder-Cook diagnosed tension headaches and focal motor seizures, and prescribed Dilantin (an anti-convulsant) and Tegretol (an anti-seizure medication). (R.pp. 225-230).

Dr. Ryder-Cook continued to treat Plaintiff in 2001, and by November 2001 Plaintiff reported that she had had no seizure activity during the previous six months. (R.pp. 233-235). Plaintiff was found to suffer from fairly significant gaze-evoked nystagmus (involuntary cyclical movement of the eyes), and could not perform tandem gait. Dr. Ryder-Cook nevertheless concluded that Plaintiff's seizure disorder was "under reasonably good control". (R.p. 235); see Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [ If a symptom can be reasonably controlled by medication or treatment, it is not disabling]. During this period of time, Plaintiff was also being treated by her primary medical care provider, who managed her seizures with Dilantin. (R.pp. 190, 193, 198-199, 245-273).

Plaintiff continued to see Dr. Ryder-Cook periodically, who noted in January 2002 that Plaintiff had experienced focal seizures on only "a couple of occasions in the last couple of years", and in February 2002 that Plaintiff had reported no seizure activity since her previous visit. Plaintiff did complain of side effects from the Lamictal (an anti-convulsant), which Dr. Ryder-Cook

4



had prescribed for her in January 2002, resulting in Dr. Ryder-Cook adjusting her medications. He also opined that because Plaintiff's job did not expose her to heavy machinery, she could still work. (R.pp. 239-240). However, Dr. Ryder-Cook was apparently called later that day by Plaintiff's daughter, who said that Plaintiff did work around heavy machinery in her job. Dr. Ryder-Cook was also advised that Plaintiff was going to seek care from another neurologist. (R.p. 241). Because of Plaintiff's complaint that she did work around heavy machinery, Dr. Ryder-Cook wrote her a note to be out of work until March 6, 2002. (R.p. 242).

Plaintiff thereafter sought a consultation with Dr. William Brannon on March 5, 2002. Dr. Brannon noted that Plaintiff needed further evaluation and that he hoped that the severity of Plaintiff's condition could be resolved within eight to twelve weeks so that she could either be allowed to return to work or seek medical retirement. On examination, Dr. Brannon could not determine whether Plaintiff was having partial seizures or not, and recommended that Plaintiff consult with an epileptologist. Dr. Brannon also noted Plaintiff's continuing complaints of headaches, but opined that her headaches did "not cause a problem that would limit her ability to work." (R.pp. 286-287). *Cf.* Gross, 785 F.2d at 1166 [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].

Plaintiff next saw Dr. Steven Karner on May 23, 2002, who found on examination that Plaintiff had intact sensation and normal coordination, muscle strength, bulk and tone. Plaintiff continued to suffer from gaze-evoked nystagmus, and he prescribed Topamax (an anti-convulsant). (R.p. 289). When Plaintiff saw Dr. Karner again on June 14, 2002, she advised that she had not experienced any recent seizures, and her coordination, station and gait were all normal. Plaintiff was placed on Zonisamide (an anti-convulsant). (R.p. 290). In August 2002, Plaintiff was excused from

5



work by one of Dr. Karner's partners, Dr. Anne Hawes, after complaining that she had experienced a seizure, but when she returned to see Dr. Karner on September 9, 2002, she reported that she had had only one seizure in the last month or so that consisted of a focal motor seizure in the left arm without loss of consciousness. Dr. Karner opined that it was "okay for [Plaintiff] to be working at this time since she has not had any loss of consciousness." (R.pp. 279, 292-293). In a certificate provided to Plaintiff's employer on September 16, 2002, Dr. Karner indicated that he would continue to evaluate her condition. (R.p. 281). However, Plaintiff's condition continued to be fluid, and by January 31, 2003 Dr. Karner opined that Plaintiff was totally and permanently unable to return to her work as a line-up clerk in the textile industry. (R.p. 284).

On May 19, 2003, state agency physician Dr. George Chandler reviewed Plaintiff's medical records and determined that Plaintiff's seizure disorder resulted in no exertional limitations, and that Plaintiff could perform work that did not require climbing of ladders, ropes or scaffolds, no more than occasional climbing of ramps and stairs, and that did not require frequent balancing, stooping, kneeling, crouching and crawling, with avoidance of all exposure to hazards. (R.pp. 145-152). Plaintiff thereafter presented to Dr. Urvi Desai on August 26, 2003 for a consultative evaluation. Plaintiff reported to Dr. Desai that she had not taken any medications since April, and that as a result her seizure frequency had increased to almost one per week. Dr. Desai noted that this abstinence had made Plaintiff's seizure frequency worse, and he began her on Zonegran.[2] He indicated that he would have to do "some basic lab work" and that he would see Plaintiff again in

---

[2] Zonegran is a medicine that is taken with other epilepsy medications to help control seizures. Zonegran is an adjunctive epilepsy medicine because it is prescribed in combination with other antiepilepsy and antiseizure medications. See www.Zonegran.com.

6



four (4) weeks. (R.pp. 301-303).

When Plaintiff returned to see Dr. Desai on September 24, 2003, she reported that she had had only one seizure since he had last seen her almost a month previous. According to Dr. Desai, "[s]he was at the beach and got very hot and suddenly noticed some light headedness followed by left upper extremity focal motor activity which lasted for five minutes. There was no overt confusion, disorientation. She got into the shade and then felt better. She is otherwise tolerating the Zonegran well." (R.p. 304). Dr. Desai instructed Plaintiff to return in three months. Id.

On November 3, 2003, another state agency physician, Dr. Hugh Park, reviewed Plaintiff's medical records and came to the same conclusion concerning Plaintiff's functional capacity as had Dr. Chandler. (R.pp. 159-166).

During a hospital admission on September 4, 2005, Plaintiff reported that she had had no seizures during the previous two months, and on examination was found to have normal speech, orientation, recall, judgment and reasoning; with normal reflexes, muscle bulk and tone. Plaintiff was discharged from the hospital on November 7, 2005 by Dr. Deepak Shah, who diagnosed Plaintiff with having had a cerebrovascular incident. He also opined that Plaintiff suffered from hypertension and hyperlipidemia. (R.p. 312).

After consideration of this medical evidence and Plaintiff's subjective testimony the ALJ determined that, while Plaintiff could no longer perform her past duties as a line-up clerk, she was nevertheless able to perform a wide range of work as long as it did not require climbing ladders, ropes, or scaffolds; work around dangerous machinery; or more than only occasional climbing of ramps and stairs. (R.pp. 19-22). The records from Plaintiff's treating and examining physicians cited hereinabove provide substantial evidence to support this finding; see Hunter v. Sullivan, 993 F.2d



31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to assessments of examining physicians]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the non-examining state agency physicians. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]. See (R.pp. 145-152, 159-166, 235, 239-240, 286-287, 290, 293, 304). The ALJ's decision further reflects that he reviewed Plaintiff's subjective testimony regarding the nature and extent of her limitations, comparing this testimony with Plaintiff's activities and the objective medical evidence, and the undersigned can find no reversible error in the ALJ's treatment and consideration of this evidence. (R.pp. 21-22); Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence].

Finally, the ALJ found that Plaintiff's non-exertional limitations did not substantially effect the occupational base of unskilled work at all exertional levels, and used the Medical-Vocational Guidelines (i.e., the "Grids")[3] to direct a finding of not disabled. (R.p. 23). As previously noted, Plaintiff has failed to present any argument to the Court as to why this finding (or any of the

---

[3]"The grids are matrices of the 'four factors identified by Congress -- physical ability, age, education, and work experience -- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy.'" Daniels v. Apfel, 154 F.3d 1129, 1132 (10th Cir. 1998) (quoting Heckler v. Campbell, 461 U.S. 458, 461-462 (1983)). "Through the Grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels (i.e., sedentary, light, medium, heavy, and very heavy.)" Daniels, 154 F.3d at 1132.

8



ALJ's other findings) are in error or warrant reversal of this decision. *Cf.* SSR 85-15, 1985 WL 56857 at *8 [noting that "[a] person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels"].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June   4,   2007



9